FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

2014 APR 24  P 2: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Walter Chruby<br>SCI-Laurel Highlands<br>5706 Glades Pike<br>Somerset, PA 15501,<br>    Plaintiff and Class Representative<br><br>v.<br><br>Global Tel*Link Corporation<br>12021 Sunset Hills Road, Suite 100<br>Reston, VA 20190<br>    Defendant<br><br>Secretary John E. Wetzel<br>Commonwealth of Pennsylvania<br>Department of Corrections<br>1920 Technology Parkway,<br>Mechanicsburg, PA 17050<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. [   ] 1:14-cv-0045&<br>JURY TRIAL (GBL/TRJ) |

## COMPLAINT

1.  Plaintiff Walter Chruby, an inmate at SCI-Laurel Highlands, brings this

    class action on his own behalf and on behalf of all those harmed by

    Defendants' misconduct in overcharging for telephone services.

2.  As set forth below, Defendant Global Tel*Link Corporation paid

    substantial sums to Defendant Commonwealth of Pennsylvania

    Department of Corrections and numerous other correctional

    institutions in exchange for the exclusive right to provide telephonic

    services to inmates under their control.  Until February 2014,

Defendant GTL used this exclusive access to bill inmates and their families for interstate telephonic services at exorbitant rates.

3.   Defendant GTL continues to use this exclusive access to bill inmates and their families for intrastate telephonic services at exorbitant rates.

4.   Defendant GTL's interstate rates have been declared unjust and unreasonable by the Federal Communication Commission, the entity with primary jurisdiction over interstate rates. *See* Order Released September 26, 2013 (FCC 13-113) in In the Matter of Rates for Interstate Calling Services, WC Docket No. 12-375 (hereinafter "FCC September 26, 2013 Order").

5.   This class action seeks to recoup those illegal charges and return those funds to the 1.1 million inmates and their families who were coerced into paying unjust, unreasonable and unfair rates to Defendant GTL for interstate and intrastate telephone calls.

### JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, § 1332(d), § 1343(3) and (4), and § 1367.

7.   This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1337(a) and 15 U.S.C. § 2, 15 and 26.

8.   This Court has subject matter jurisdiction over this lawsuit pursuant to 42 U.S.C. § 1983.

9.     This Court has subject matter jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 206 and 207.

10.    This Court has subject matter over this lawsuit pursuant to 15 U.S.C. § § 4 and 15.

11.    Venue is proper in this district.  28 U.S.C. § 1391, 15 U.S.C. § 22.


## PARTIES

12.    Plaintiff Walter Chruby is a citizen of Pennsylvania.  He has been incarcerated for approximately 19 years.  Beginning in October 2005, the Pennsylvania Department of Corrections (hereinafter "PADOC") required all inmates, including Mr. Chruby, to place telephone calls using Defendant GTL services.  As a result, Mr. Chruby has been forced to pay unreasonable, unjust and unfair rates for both interstate and intrastate services.  Mr. Chruby filed an administrative complaint seeking redress, but PADOC has not timely responded to grievance no. 497687.

13.    Global Tel*Link Corporation (hereinafter "Defendant GTL") is a corporation with its corporate headquarters at 12021 Sunset Hills Road, Suite 100, Reston, VA 20190 and has been in business approximately 25 years.  Defendant GTL is headquartered in Reston, Virginia with additional regional offices in Texas (Houston), California (Sacramento), Pennsylvania (Altoona), and Alabama (Mobile).  Defendant

GTL also maintains sales and administrative offices across the United States.

14.    Defendant GTL provides inmate calling services in over 2,200 facilities and bills more than 1.1 million inmates in 48 states for those services. In order to obtain the exclusive right to provide inmate calling services in those facilities, Defendant GTL entered into contracts with Departments of Corrections and numerous counties that provided for payments referred to as "site commission payments." Defendant GTL's website admits to making these payments, characterized as "a steady source of income to help augment budgets." Defendant GTL payments resulted in Defendant GTL obtaining the exclusive right to provide and bill for telephonic services for the approximately 1.1 million inmates.

15.    Defendant Secretary John E. Wetzel oversees Pennsylvania Department of Corrections (hereinafter "PADOC"), which operates 26 state correction institutions, 14 community corrections centers, and approximately 40 additional facilities referred to as "contract facilities." PADOC houses more than 51,000 inmates.

## FACTUAL ALLEGATIONS

16.    Correctional institutions provide inmates with access to pay telephones which is the exclusive means for inmates to make interstate and intrastate telephone calls to families, friends and lawyers. The Federal Communications Act governs all such telephone calls as payphone service. 47 U.S.C. §276 (d).

17. PADOC and the other correctional institutions housing the inmates have the power to decide which company or companies are permitted to operate and bill for telephonic services that are being purchased by inmates or their families.

18. Inmates and those receiving their calls have three ways to pay for these telephonic services: collect, debit or prepaid payment options.

19. Defendant GTL financially incented PADOC and other correctional institutions to permit Defendant GTL to serve as the exclusive provider of interstate and intrastate telephonic services to Plaintiff Chruby and others similarly situated. Defendant GTL did so by promising to pay Defendant PADOC certain kickbacks, which Defendant GTL refers to as "site commission payments."

20. Defendant GTL's kickbacks to Defendant PADOC and other correctional institutions were made for one purpose only: to obtain exclusivity and shut out any competitors.

21. Secretary Wetzel, and former Secretary Jeffrey A. Beard before him, granted exclusive access to GTL.

22. Reasonable discovery will show Defendant Secretary Wetzel and former Secretary Beard granted exclusive access to Defendant GTL because Defendant GTL was willing to pay the highest-level of kickbacks to PADOC.

23. Reasonable discovery will show that PADOC and the other correctional institutions granting exclusive access to Defendant GTL

did not use these GTL funds to offset or reduce the telephone bills being foisted upon the inmates and their families. Nor, as reasonable discovery will show, were the entirety of these GTL kickbacks used for telephonic security measures.

24.     Instead, Defendant Secretary Wetzel, PADOC and the other correctional institutions accepted the payments from Defendant GTL knowing that they were giving Defendant GTL an exclusive opportunity wholly protected from marketplace competition.

25.     Reasonable discovery will show that Defendant Secretary Wetzel of PADOC and the other correctional institutions failed to take any steps to ensure that their bestowal of exclusive access to Defendant GTL did not harm the inmates and their families, and instead were complicit with Defendant GTL and permitted Defendant GTL to overcharge and discriminate against inmates and their families.

26.     Defendant GTL used the exclusive access purchased from Defendant Secretary Wetzel of PADOC and the other correctional institutions to extract unjust and unreasonable telephone rates from inmates and their families for both intrastate and interstate telephone calls, with such inflated rates and payments constituting and amounting to additional fines and costs imposed upon inmates and their families, because of their unique situation, without due process of law.

27.     Defendant GTL took a series of illegal action to ensure that it retained exclusivity.

6

28. Defendant GTL engaged in unreasonable call blocking. Defendant GTL call blocking was done to prevent inmates and their families from shifting their telephone calls away from the overpriced GTL service to other, lower-priced providers who had developed innovative ways to use Voice over Internet Protocol to assist inmates and families trapped by Defendant GTL's price-gouging.

29. Reasonable discovery will show that Defendant GTL also unnecessarily and routinely retained advance payments made by inmates.

30. Reasonable discovery will show that Defendant GTL also overcharged for ancillary services such as billing and processing.

31. Defendant GTL used and uses its purchased exclusivity to overcharge for telephone services. Reasonable discovery will show that Defendant GTL's costs are constant without regard to the size of the facility. See FCC September 26 Order at para. 81 and footnote 303.

32. Defendant GTL was and is required by Section 201 of the Federal Communications Act to charge for services at rates that are just and reasonable. Defendant GTL violated this Section.

33. Defendant GTL was and is required by Section 276 of the Federal Communications Act to charge for services at rates that are fair. Defendant GTL violated this Section.

34. Defendant GTL was and is required by Section 202 of the Federal Communications Act to refrain from subjecting any particular class of

persons to undue or unreasonable prejudice or disadvantage. Defendant GTL violated this Section.

35.    Defendant GTL was and is required by Section 1 of the Sherman Act to refrain from entering into contracts intended to restrain interstate trade or commerce.

36.    Defendant GTL was and is required by Section 13 of Title 15 of the United States Code to refrain from making payments to induce a discrimination in price.

37.    This lawsuit seeks redress to compensate the Class for Defendant GTL's long history of charging discriminatory, unjust and unreasonable rates for telephone calls originating from correctional facilities paid off by Defendant GTL.

38.    This overcharging has been made possible by Defendant GTL's illegal and impermissible behaviors, including but not limited to, paying site commissions, blocking calls, failing to bill for services based on Defendant GTL's reasonable costs, unnecessarily and routinely retaining advance payments made by inmates, and overcharging for ancillary services such as billing and processing.

39.    Defendant Secretary Wetzel and the other leaders of correctional institutions who contracted with Defendant GTL failed to supervise Defendant GTL and thereby permitted Defendant GTL to charge inmates under their control, and their families, rates that generated monopolistic profits.  Defendant Secretary Wetzel's failures to

supervise, and the similar failures of other correctional leadership, unduly burdened the First Amendment rights of those inmates and their families under their jurisdiction.

40.  Beginning in 2000, certain inmates and others harmed by the misconduct of Defendant GTL and another company providing inmate calling services (Securus) filed a class action seeking redress. *See Martha Wright et al. v. Corrections Corporation of America, et al.*, C.A. No. 00-293 (United States District Court for the District of Columbia).

41.  This putative class action tolled the statute of limitations applicable to the claims of those harmed by Defendant GTL.

42.  Defendant GTL and its co-defendants prevailed on their motion to dismiss the lawsuit, successfully arguing that the Federal Communications Commission (hereinafter "FCC") exercised primary jurisdiction over Defendant GTL's rates for interstate telephonic services. The District Court for the District of Columbia dismissed the case without prejudice to permit the FCC to exercise jurisdiction. *See* Order, *Martha Wright et al. v. Corrections Corporation of America, et al.*, C.A. 00-293 (August 22, 2001).

43.  In 2003, Mrs. Wright and her fellow plaintiffs filed a petition with the FCC seeking to challenge the overcharging on interstate telephone calls. *See Petition*, CC Docket No. 92-128, Public Notice DA 03-4027, 2003 WL 23095474.

44.    The FCC concluded it had jurisdiction over Defendant GTL's interstate

rates pursuant to the Federal Communications Act, 47 U.S.C. 42 U.S.C.

§ 201. *See FCC September 26, 2013 Order* at footnote 40, explaining

why the FCC rejected Defendant GTL's arguments that it was not

governed by Section 201 of the Act's requirement that charges shall

be "just and reasonable."

45.    The FCC concluded that Defendant GTL's rates were not based on its

costs, and instead were unjust and unreasonable under Section 201

and unfair under Section 276.

46.    The FCC ruled that Defendant GTL could not pass on the cost of site

commission payments to the inmates and their families. *See FCC

September 26, 2013 Order* at para. 53, explaining that site commission

payments cannot be included as costs but are instead profits.

47.    Defendant GTL's interstate and intrastate charges were and are unfair,

unreasonable, discriminatory and unjust. For example, in New York, a

state that does not receive site commission payments, the cost of a 20-

minute call from an inmate in a correctional institution for either an

intrastate or interstate call is less than one dollar -- $.96. That amount

includes a flat per minute charge with no connection fee. See *FCC

September 26, 2013 Order* at footnote 513.

48.    In contrast, in states in which Defendant GTL has made payments to

procure exclusive access, inmates – including Plaintiff and Class

Representative Chruby - and their families have been and continue to

be coerced into paying unfair, unreasonable, discriminatory and unjust charges for telephone services. For example, prior to February 2014, Defendant GTL charged approximately $13.50 for a 20-minute interstate call.

49.     Defendant GTL continues to uses its monopolistic position, obtained via paying kickbacks for exclusive access, to overcharge for intrastate calls. *See* Defendant GTL Pennsylvania Price List No. 1, Effective September 17, 2013 (available on Defendant GTL's website).

<h3 style="text-align:center">CLASS ACTION ALLEGATIONS</h3>

50.     Plaintiff and Class Representative Chruby brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). This lawsuit seeks damages in excess of $5,000,000.

51.     This action satisfies all the requirements of Fed.R.Civ.P. 23.

52.     This action seeks to certify a class defined as follows: "All persons who have paid Defendant GTL for interstate and intrastate telephone services originating from correctional institutions that received Defendant GTL site commission payments."

53.     Discovery will establish the precise number and locations of the class members. Based on the information set forth on Defendant GTL's website, it appears that the class consists of at least 1.1 million inmates and their families. The class is so numerous that joinder of all members is impracticable.

54.   Plaintiff Walter Chruby will seek to certify a nationwide class with subclasses designed by state. Plaintiff Walter Chruby is located within the Pennsylvania subclass, which has approximately 51,000 inmate members and likely the same or great number of family members.

55.   The common questions of law and fact that must be resolved in this lawsuit predominate over any questions affecting only individual class members.

56.   The class action mechanism is superior to other available methods for resolution of the dispute.

57.   Defendant GTL has no defenses applicable to individual plaintiffs or the subclasses of plaintiffs.  All of Defendant GTL's defenses apply to all members of the class.

58.   Any defenses that may be invoked by Defendant Secretary Wexler of PADOC to respond to the First Amendment claims apply with equal force to all members of the Pennsylvania subclass.  Defendant Secretary Wexler does not have any defenses applicable to individual plaintiffs.

59.   Plaintiff and Class Representative Chruby has claims typical of the class.

60.   Plaintiff and Class Representative Chruby has been devoting time studying the facts and law applicable to this class action.  He has been and will be able to devote the time and energies needed to fairly and adequately protect the interests of the class.

61.   Plaintiff and Class Representative Chruby has retained counsel experienced in class action litigation, including impact class litigation designed to remedies wrongs inflicted on persons in governmental institutions.

62.   Plaintiff and Class Representative Chruby has no interests adverse to or in conflict with any other members of the putative class.

## CLASS COUNTS

### COUNT I AGAINST DEFENDANT GTL – VIOLATION OF THE FEDERAL COMMUNICATIONS ACT

63.   Each and every prior allegation is hereby incorporated in full by reference into this Count as if fully set forth herein.

64.   Defendant GTL's conduct is governed by the Federal Communications Act.

65.   Defendant GTL violated Section 201 of the Federal Communications Act (codified at 47 U.S.C. § 201) by charging Plaintiff Chruby and the Class Members rates that were unjust and unreasonable, and hence unlawful.

66.   Defendant GTL violated Section 202 of the Federal Communications Act (codified at 47 U.S.C. § 202) by charging Plaintiff Chruby and the Class Members discriminatory rates.

67.   Defendant GTL violated Section 276 of the Federal Communications Act (codified at 47 U.S.C. § 202) by charging Plaintiff Chruby and the Class unfair rates.

68.     Pursuant to Sections 206 and 207 of the Federal Communications Act (codified at 47 U.S.C. §§ 206 and 207), Plaintiff Chruby and the Class seek all remedies permissible as means to redress the harms caused by the past and ongoing violations of the Federal Communication Act, including but not limited to injunctive relief, compensatory damages, and reasonable attorneys fees and costs.

**COUNT II AGAINST DEFENDANT GTL – UNJUST ENRICHMENT**

69.     Each and every prior allegation is hereby incorporated in full by reference into this Count as if fully set forth herein.

70.     Defendant GTL improperly used its exclusive access to correctional facilities to unjustly enrich itself at the expense of Plaintiff Chruby and the Class.

71.     Defendant GTL received monies from Plaintiff Chruby and the Class based on unjust, unreasonable, unfair and discriminatory charges for telephone services.

72.     Defendant GTL engaged in impermissible conduct to prevent Plaintiff Chruby and the Class from avoiding or mitigating these unjust, unreasonable, unfair and discriminatory charges for telephone services.

73.     Plaintiff Chruby and the Class seek all forms of remedies possible to punish Defendant GTL for its wrongful acts and unjust enrichment, including but not limited to an accounting, restitution, disgorgement of all

profits, compensatory damages, punitive damages, and payment of attorneys fees and costs.

## COUNT III AGAINST DEFENDANT GTL – VIOLATION OF THE FEDERAL ANTITRUST LAWS

74.     Each and every prior allegation is hereby incorporated in full by reference into this Count as if fully set forth herein.

75.     Defendant GTL violated the Section 1 of the Sherman Act (codified at 15 U.S.C. §1), which prohibits GTL from entering into contracts designed to restrain competition.

76.     Defendant GTL violated the Section 13 of the Sherman Act (codified at 15 U.S.C. §13), which prohibits GTL from paying kickbacks to procure or attempt to procure a monopoly.

77.     Defendant GTL knowingly and intentionally paid kickbacks (called "site commission payments") to the state correctional departments, including PADOC, in order to obtain exclusive access to the rights to overcharge Plaintiff Chruby and the Class.

78.     Defendant GTL used this illegally-procured exclusive access to charges rates for telephone services that were discriminatory, unjust and unreasonable, and prohibited by law.

79.     Defendant GTL is not entitled to "state action" immunity from the federal antitrust laws because Defendant GTL was not acting pursuant to a clearly articulated state policy to use exclusive access as a mechanism to overcharge inmates, Defendant GTL's billings were not being supervised

by the states themselves and GTL was improperly and illegally making kickback payments to accomplish its monopolistic practices.

80.    Had Defendant GTL refrained from violating the Sherman Act, other telephone service providers would have been willing to provide payphone services in the correctional facilities.  Such competition would have led to fair and reasonable charges for those services.

81.    Plaintiff Chruby and the Class were injured by Defendant GTL's violation of the antitrust laws of the United States.  They have standing to sue for such antitrust violations under 15 U.S.C. §15.

**82.**    Plaintiff Chruby and the Class seek all remedies permissible under the antitrust laws of the United States, including but not limited to treble damages.

**PENNSYLVANIA SUBCLASS COUNTS**

**COUNT IV ASSERTED BY PLAINTIFF CHRUBY AND THE PENNSYVLANIA SUBCLASS AGAINST DEFENDANT SECRETARY WETZEL - VIOLATION OF FIRST AMENDMENT**

83.    Each and every prior allegation is hereby incorporated in full by reference into this Count as if fully set forth herein.

84.    Defendant Secretary Wetzel violated the First Amendment rights of Plaintiff Chruby and the Pennsylvania subclass (*i.e.* those inmates located in Pennsylvania correctional facilities under Secretary Wetzel's control) by failing to supervise Defendant GTL's billings or otherwise put in place policies that stopped Defendant GTL from using its access to inmates to obtain monopolistic profits by overcharging inmates.

85.    Defendant Secretary Wetzel's imposition of onerous burdens on the exercise of First Amendment rights by inmates and their families had no rational relationship to any valid governmental interest in penal security.

86.    Plaintiff Chruby and the Class seek all remedies permissible under statutory and common law to remedy these violation of their Constitutional rights, including but not limited to injunctive relief, restitution, compensatory damages, punitive damages, and attorneys fees and costs.

## PRAYER FOR RELIEF

Plaintiff Chruby and the Class seek all remedies permissible as means to redress the harms inflicted by Defendants, including but not limited to

(1) all remedies available under the Federal Communications Act, including but not limited to compensatory damages, and attorneys fees and costs;

(2) all remedies available under the Constitution and statutes intended to implement the Constitution, including but not limited to injunctive relief, compensatory damages, punitive damages, and attorneys fees and costs;

(3) all remedies available under the Sherman Act and other antitrust laws of the United States, including but not limited to treble damages, and attorneys fees and costs;

(4) all remedies available under common law, including but not limited to an accounting, restitution, disgorgement of all profits, direct, consequential and

incidental damages, compensatory damages, punitive damages, and attorneys

fees and costs;

(5) an award of attorneys' fees, costs and expenses, as provided by law or equity

or otherwise;

(6) an award of pre-judgment and post-judgment interest; and

(7) any and all additional remedies that justice may require.

April 24, 2014

Susan L. Burke
Virginia Bar No. 27769
BURKE PLLC
1000 Potomac Street, N.W.
Washington, DC 20007-1105
Telephone: (410) 733-5444
Facsimile: (410) 733-5444
sburke@burkepllc.com

Robert F. Morris
Mark C. Clemm
Morris Clemm & Wilson PC
527 Plymouth Road
Suite 416
Plymouth Meeting, PA 19462
Telephone: (610) 825-0500
Facsimile: (610) 834-1776
rmorris@morrisclemm.com
(seeking *pro hace* admission)